1  Kelly M. Dermody (Cal. Bar No. 171716)
   Jahan C. Sagafi (Cal. Bar No. 224887)
2  LIEFF, CABRASER, HEIMANN &
      BERNSTEIN, LLP
3  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
4  Telephone:  (415) 956-1000
   Facsimile:   (415) 956-1008
5  E-Mail: kdermody@lchb.com
   E-Mail: jsagafi@lchb.com
6
   Richard C. Haber (admitted *pro hac vice*)
7  Laura L. Volpini (admitted *pro hac vice*)
   HABER POLK LLP
8  Eaton Center, Suite 620
   1111 Superior Avenue
9  Cleveland, Ohio 44114
   Telephone:  (216) 241-0700
10 Facsimile:   (216) 241-0739
   E-Mail: rhaber@haberpolk.com
11 E-Mail: lvolpini@haberpolk.com

12 *Attorneys for Plaintiffs and the proposed Class*

13              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
14           SAN FRANCISCO / OAKLAND DIVISION

15 MARTIN LEWIS and AARON COOPER,          Case No. 08-2670 CW
   on behalf of themselves and a class of
16 those similarly situated,

17                    Plaintiffs,          **REPLY IN SUPPORT OF PLAINTIFFS'
                                           MOTION TO COMPEL DISCOVERY
                                           RESPONSES**
18            v.
                                           Date:      January 15, 2009
19 WELLS FARGO & CO.,                      Time:      4:15 p.m.
                                           Courtroom: 2, 4th floor (telephonic hearing)
20                    Defendant.           Judge:     Honorable Claudia Wilken

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 1

III.  ARGUMENT ..................................................................................................... 2

      A.    Wells Fargo's desire to limit discovery is premature and is
          unsupported by the record, which shows that many non-Network
          Engineers are likely similarly situated to Network Engineers. .................. 2

            1.    Plaintiffs need equal access to the discovery Wells Fargo
                 has compiled regarding class certification. ..................................... 2

            2.    Relevant authority supports Plaintiffs' request for discovery
                 tailored to the class definition in the complaint. ............................ 4

            3.    Documents, class member declarations, and Wells Fargo's
                 own admissions reveal many non-Network Engineers who
                 are similarly situated to the named Plaintiffs. ................................ 5

                  a.    Organizational charts and job descriptions reveal
                     non-Network Engineers working alongside Network
                     Engineers, presumably in similar roles. ............................ 5

                  b.    Four proposed Class Members have testified that
                     Network Engineers and non-Network Engineers
                     perform similar duties. ....................................................... 6

                  c.    Wells Fargo's argument and testimony reveals that
                     non-Network Engineers performed technical support
                     work satisfying the class definition. .................................... 7

      B.    Wells Fargo's refusal to produce STAMP data in electronic form
           defies the Court's instruction last month. ................................................... 9

IV.   CONCLUSION .................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

### Cases

*Davis v. Charoen Pohpkand, Inc.*,
   303 F. Supp. 1272 (M.D. Ala. 2004) ........................................................................... 5

*Gerlach v. Wells Fargo & Co.*,
   No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. March 28, 2006) ........................... 4

*Grayson v. K Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996) ................................................................................... 4

*Heffelfinger v. Electronic Data Services, Inc.*,
   No. CV 07-00101, 2008 WL 2444690 (C.D. Cal. June 6, 2008) ................................ 5

*Herring v. Hewitt Associates, Inc.*,
   No. 06-267 (GEB), 2007 WL 2121693 (D.N.J. July 24, 2007) .................................. 4

*Hill v. Eddie Bauer*,
   242 F.R.D. 556 (C.D. Cal. 2007) ............................................................................... 5

*Long v. Hewlett Packard*, No. C06-02816,
   2006 U.S. Dist. LEXIS 94013 (N.D. Cal. Dec. 19, 2006) ......................................... 3

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985) ................................................................................... 5

*Smith v. Lowe's Home Centers*,
   236 F.R.D. 354 (S.D. Ohio 2006) .............................................................................. 5

*Valdivia v. Schwarzenegger*,
   No. Civ. S-94-671, 2007 WL 3096168 (E.D. Cal. Oct. 22, 2007) ............................. 5

*Washington v. Brown & Williamson*,
   959 F.2d 1566 (11th Cir. 1992) ................................................................................. 5

*Wertheim v. State of Arizona*,
   No. CIV 92-453 PHX RCB, 1993 WL 603552 (D. Ariz. Sept. 30, 1993) ................... 4

### Rules

N.D. Cal. L.R. 7-4(b) .................................................................................................. 1

1

## I.     INTRODUCTION

Plaintiffs respectfully submit this brief in reply to Wells Fargo's Objections to Plaintiffs' Request for Discovery.[1]  After the initial telephonic hearing on December 23, 2008, and Wells Fargo's subsequent concessions, only two areas of dispute remain:  (1) the scope of discovery; and (2) production of electronic timekeeping data.[2]  Wells Fargo continues to refuse to provide discovery beyond its own redrawn class definition.  It also refuses, without basis, to produce readily-available electronic data.  Stripped of hyperbole, Wells Fargo's arguments do not support its positions.  At best, they are more appropriate to its class certification opposition, which it will be entitled to brief after the parties are permitted sufficient discovery to present cogent positions on class issues to the Court.  Contrary to Wells Fargo's arguments, Plaintiffs do not need first to satisfy all Rule 23 factors in order to get discovery intended to support a Rule 23 motion.  Plaintiffs have satisfied the relevant test for obtaining discovery here, and respectfully request that it be so ordered.

## II.    BACKGROUND

Plaintiffs have been seeking reasonable, targeted discovery regarding Wells Fargo's organizational structure and putative class members' hours, job titles, job codes, and job duties (as evidenced by job descriptions, policies and protocols governing their work, and resources they use in performing their duties) since just before the initial Rule 26(f) conference on July 31, 2008.  *See, e.g.*, Declaration of Jahan C. Sagafi ("Sagafi Dec."), ¶ 2, Ex. A (letter from Jahan Sagafi to defense counsel dated July 30, 2008 requesting targeted discovery); *id.*, ¶ 3, Ex. B (letter from Jahan Sagafi to defense counsel dated July 30, 2008 elaborating and noting that "we would like Wells Fargo to prioritize production of" eight enumerated categories of documents).[3]

---

[1] Wells Fargo's 33-page opposition brief (styled "Objections" and referred to herein as "Def. Brf.") exceeds the maximum length for briefs and memoranda allowed without Court approval. N.D. Cal. L.R. 7-4(b).

[2] Plaintiffs raised two additional issues in the initial letter brief ((1) improperly redacted organizational charts, and (2) electronic payroll data) that appear to have been resolved by Wells Fargo's agreement to produce them as requested.

[3] Wells Fargo complains that Plaintiffs must identify specific document requests.  *See* Def. Brf. at 9.  Plaintiffs have done so.  *See, e.g.*, Sagafi Dec., ¶ 4, Ex. C (letter from Jahan Sagafi to defense counsel dated November 24, 2008 listing specific document requests supporting each request for further discovery).

1   Plaintiffs have consistently requested production of these documents and deponents in phone

2   calls, e-mails, and letters since then.

3        In response, Wells Fargo has delayed production, improperly redacted documents,

4   and professed confusion as to the documents sought even after Plaintiffs have clarified their

5   requests.  Wells Fargo's strategy appears to be focused on creating disputes rather than solving

6   them.  For example, in response to Plaintiffs' request for a *list* of job titles and job codes to help

7   tailor further document requests (Second Set of Discovery Requests, No. 7), Wells Fargo

8   advances the tortured interpretation that this request might encompass all personnel files, rather

9   than providing a simple list as requested.  *See* Def. Brf. at 10:5.  Wells Fargo has also zealously

10  sought to redraft Plaintiffs' class definition (defined now around non-exempt job duties) to solely

11  Network Engineers in the Technology Information Group ("TIG"), trying to limit the case even

12  before the preliminary discovery has been produced.

13       In the more than seven months of litigation (and allegedly 700 hours of defense

14  attorney and Wells Fargo time), Wells Fargo has produced only 47 documents applicable to the

15  class generally (in addition to 169 documents applicable to the named Plaintiffs).  *Id.*, ¶ 5.  But as

16  is evident from Wells Fargo's extensive brief (34 pages of argument plus a dozen declarations),

17  Wells Fargo and its counsel have invested substantial time gathering the information that they

18  seek to deny Plaintiffs.  In short, Wells Fargo has done significant work compiling information

19  relevant to class certification of employees beyond the Network Engineer job title and, rather than

20  producing it, has withheld it, constructing self-serving arguments based on that one-sided record.

21  Plaintiffs request equal access to those facts.

22  **III.   ARGUMENT**

23       **A.   Wells Fargo's desire to limit discovery is premature and is unsupported by
            the record, which shows that many non-Network Engineers are likely**
24          **similarly situated to Network Engineers.**

25          **1.   Plaintiffs need equal access to the discovery Wells Fargo has compiled
                  regarding class certification.**
26

27       Two days ago, in response to Plaintiffs' three-page letter brief, Defendants filed a

28  34-page brief arguing the propriety of *class certification*.  Defendants appear to argue,

1   erroneously, that Plaintiffs must first obtain class certification before they can receive discovery

2   regarding the contours of the common practices at issue and class members affected.  This

3   argument misconstrues the standards for discovery at this stage of the case.  It is well settled that

4   "[t]imely discovery . . . may be desirable before the initial class determination when pertinent

5   facts are in dispute, especially when information concerning these facts is exclusively in the

6   control of the defendants."  Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 24:80

7   (4th ed. 2002).  Additionally, the Ninth Circuit has recognized that "discovery is often necessary

8   to determine if a class is maintainable and to define the scope of the class."  *Barnhart v. Safeway*

9   *Stores, Inc.*, No. CIV S-92-0803, 1992 U.S. Dist. LEXIS 22572, at *4 (E.D. Cal. Dec. 11, 1992)

10  (*citing Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977)); *Long v.*

11  *Hewlett Packard*, No. C06-02816, 2006 U.S. Dist. LEXIS 94013, at *4 (N.D. Cal. Dec. 19, 2006)

12  ("The court must permit discovery which will provide all the information that may be necessary

13  in determining whether to certify a class.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

14  340, 351 n.13 (1978)); *Pittman v. E.I. du Pont de Nemours & Co., Inc.*, 552 F.2d 149 (5th Cir.

15  1977) (holding that discovery is "essential" to a determination of the proper scope of the class).

16          Here, Plaintiffs simply seek access to the documents and testimony that will form

17  a basis for their class certification motions.  Wells Fargo cannot argue that class certification is

18  impossible while attempting to keep Plaintiffs in the dark about the facts that provide the basis for

19  those arguments.

20          At this juncture, discovery regarding the class positions described in the complaint

21  is appropriate so that Plaintiffs have a full and fair opportunity to argue class certification based

22  on evidence.  Such discovery includes job description templates, Wells Fargo Services Company

23  Job Family Matrix documents, Job Level Productivity, and Skillset Expectations documents.

24  Wells Fargo has produced 18 pages of such documents for Network Engineers and should

25  produce such documents as to other technical support worker positions.  (For example, in

26  November, Plaintiffs noted that one of these documents refers to a "Professional Technology

27  Career Level Matrix" which provides "information on knowledge and experience requirements,"

28  and requested such documents, but have yet to receive any.)  Likewise, Wells Fargo could have

1    readily provided the information it puts forth in this opposition brief to Plaintiffs in discovery or

2    even informal discussions.  While Plaintiffs are willing to consider arguments that a given job

3    title is reserved for programmers (as Wells Fargo argues with respect to the Application Systems

4    Engineer title at pages 29-31), or that the type of technical support work performed by Operation

5    Systems Engineers (page 31) makes employees not similarly situated to Plaintiffs, Plaintiffs

6    cannot adequately consider such arguments in the absence of meaningful discovery.

7              **2.      Relevant authority supports Plaintiffs' request for discovery tailored
                         to the class definition in the complaint.**
8

9              As set forth in Plaintiffs' opening letter brief, there is ample authority for the

10   proposition that Plaintiffs may seek class certification for more than one job title.  In fact, Wells

11   Fargo does not even mention Plaintiffs' lead case, *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th

12   Cir. 1996), which holds: "plaintiffs need show only that their positions are similar, not identical,

13   to the positions held by the putative class members." *Id.* at 1096.

14             In their effort to distinguish three other cases cited in Plaintiffs' opening letter

15   brief, Wells Fargo misconstrues Plaintiffs' "proposed class."  Wells Fargo fails, however, to

16   counter the basic points made by Plaintiffs' citations – that class certification of multiple

17   positions is often allowed, and that discovery of those positions is therefore appropriate.  For

18   example, in trying to distinguish *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 WL

19   824652 (N.D. Cal. March 28, 2006), Wells Fargo notes that the class members in that case

20   "share[d] a job description."  Def. Brf. at 22:15.  But the similarity of job descriptions from one

21   job to another is precisely the kind of evidentiary debate Wells Fargo seeks to preempt by

22   withholding exactly these types of documents.  Similarly, Wells Fargo admits that the sub-class

23   certified in *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552 (D. Ariz.

24   Sept. 30, 1993), was defined in part by reference to job duties.  Plaintiffs simply seek discovery to

25   do the same thing here.  Lastly, Wells Fargo ignores that in *Herring v. Hewitt Associates, Inc.*,

26   No. 06-267 (GEB), 2007 WL 2121693 (D.N.J. July 24, 2007), the defendant opposed certification

27   by arguing that the three position titles were too distinct, even though they could be described by

28   one over-arching description.

1    The authority cited in Wells Fargo's brief does not contradict the straightforward

2    principle that class certification as to multiple positions is possible.  In fact, one of Wells Fargo's

3    main cases directly supports Plaintiffs' position.  Specifically, Wells Fargo's citation to

4    *Heffelfinger v. Electronic Data Services, Inc.*, No. CV 07-00101, 2008 WL 2444690 (C.D. Cal.

5    June 6, 2008), strongly supports Plaintiffs' argument.  In that case, the court addressed summary

6    judgment after having *certified a class* (presumably based on evidence collected in discovery) of

7    "IT workers" in *multiple job positions*.  Plaintiffs seek to prosecute this case similarly, by seeking

8    discovery to support an eventual motion for certification of a multiple-job title class of IT

9    workers.[4]

10 / 11   **3.    Documents, class member declarations, and Wells Fargo's own admissions reveal many non-Network Engineers who are similarly situated to the named Plaintiffs.**

12    Even at this early stage of discovery, the factual record – including organizational

13    charts and job descriptions, Wells Fargo's arguments, and class member declarations –

14    contradicts Wells Fargo's argument that the class definition should be limited to Network

15    Engineers in TIG.

16 / 17   **a.    Organizational charts and job descriptions reveal non-Network Engineers working alongside Network Engineers, presumably in similar roles.**

18    The documentary record, thin as it is, already shows that a limitation of discovery

19    to Network Engineer is inappropriate and artificial.  Wells Fargo has only produced 47 documents

20    applicable to Network Engineers, as well as 169 documents applicable to the named Plaintiffs.

21

22    ---

[4] Other citations are simply not on point.  *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985) (affirming statewide, rather than nationwide, scope of discovery where plaintiff alleged that Post Office discriminated against epileptics but only provided two examples of such discrimination); *Hill v. Eddie Bauer*, 242 F.R.D. 556 (C.D. Cal. 2007) (denying request for production of store sales data kept as hard-copy receipts of individual transactions); *Smith v. Lowe's Home Centers*, 236 F.R.D. 354 (S.D. Ohio 2006) (limiting discovery of opt-in plaintiffs); *Valdivia v. Schwarzenegger*, No. Civ. S-94-671, 2007 WL 3096168 (E.D. Cal. Oct. 22, 2007) (holding that narcotics addicts are not members of a class of parolees because including them would render parts of an injunction inoperative); *Washington v. Brown & Williamson*, 959 F.2d 1566 (11th Cir. 1992) (denying certification of class of "all black employees" in discrimination case); *Davis v. Charoen Pohpkand, Inc.*, 303 F. Supp. 1272 (M.D. Ala. 2004) (no class definition given other than "similarly situated employees").

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO. 08-2670 CW

Even within those documents, Plaintiffs have identified organizational charts and job descriptions interspersing similarly-situated Network Engineers and non-Network Engineers, concealed only by defense counsel's improper redactions.[5]

**b.**   **Four proposed Class Members have testified that Network Engineers and non-Network Engineers perform similar duties.**

Class member testimony also supports the reasonable discovery requested. Though Plaintiffs are just beginning to interview the potential class members who have contacted counsel in response to the December letter to Network Engineers,[6] four signed declarations are submitted herewith supporting Plaintiffs' position. Specifically, in these declarations, class members describe their job duties and attest from first-hand experience that employees in various non-Network Engineer positions perform technical support work similar to the named Plaintiffs and satisfy the class definition.

For example, Cassius Conway worked during the class period in three non-Network Engineer positions: E-Business Consultant,[7] Information Security Analyst, and E-Business Analyst. Declaration of Cassius Conway, ¶ 1. He testifies that in all three roles his primary duty was "supporting Wells Fargo's security infrastructure and networks," performing "routine" tasks "over and over again." *Id.*, ¶¶ 4, 9. In each of the three roles, Mr. Conway worked in concert with up to dozens of colleagues in those three non-Network Engineer positions as well as 15-40 Network Engineers. *Id.*, ¶ 10. He concludes that they all "performed the same work" described in his declaration – supporting the company's technical infrastructure. *Id.*

Another potential class member testifies that he has worked as a Network Engineer and then as an Information Security Analyst since 2000 in Minnesota, and that he has "consistently had the primary duty of supporting and maintaining Wells Fargo's hardware and software" in both roles. Declaration of Scott Lovelady, ¶ 4. In both jobs, "I maintain a

---

[5] Wells Fargo has promised to provide clean, unredacted copies of these documents but has not yet done so, despite the Court's instruction over one month ago.

[6] This letter was sent to 442 Network Engineers pursuant to the Court's October 10 and November 4 orders. The delay in sending the letter is due to the time Wells Fargo claimed to need to compile the list of Network Engineers.

[7] Wells Fargo's brief incorrectly recounts Mr. Conway's job title. Def. Brf. at 29:6.

REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO. 08-2670 CW

1   complicated piece of machinery; fix it when it is not working properly, and maintain it according

2   to specifications that were not set by me." *Id.*, ¶ 6. His work both as a Network Engineer and as

3   an Information Security Analyst requires him "to follow strict change control procedures, which

4   govern how and when systems can be interrupted." *Id.*, ¶ 9. As a Network Engineer, he worked

5   with approximately 17 similarly situated Network Engineers in his own group and another group.

6   *Id.*, ¶ 10(a). As an Information Security Analyst, he works with one other Information Security

7   Analyst and one Information Security Engineer, who "do the same kind of work as me." *Id.*,

8   ¶ 10(b). Finally, Mr. Lovelady testifies that he works with Network Engineers in different groups

9   who monitor and repair the Wells Fargo technical infrastructure like he does and "handl[e]

10  problems from the same system I use." *Id.*

11          Likewise, a former Network Engineer from California testifies that he worked with

12  other exempt technical support workers on his team and on other teams who "did the same kind

13  of work I have described." Declaration of Stephen Alparone, ¶ 12.

14          Lastly, another former Network Engineer, who worked in a different group from

15  the named Plaintiffs in Minnesota, testifies that she worked with other Network Engineers,

16  PC/LAN Engineers, and non-Network Engineers she knew as "firewall engineers." Declaration

17  of Anissa Schilling, ¶ 12. She, the other Network Engineers, and the non-Network Engineers

18  followed the same change request and other processes, received assignments from the same

19  system, and received network configuration information from the same group. *Id.*

20                      **c.      Wells Fargo's argument and testimony reveals that non-
                                  Network Engineers performed technical support work**
21                      **                satisfying the class definition.**

22          Third, even Wells Fargo's own arguments and self-serving declarations support

23  the feasibility of a class definition encompassing several job titles. For example, Wells Fargo

24  describes the installation, support, and maintenance role played by Operation Systems Engineers,

25  Web Systems Engineers, Information Security Analysts, and Information Security Engineers in

26  terms that satisfy the class definition. Def. Brf. at 31-33; Declaration of Carol Lockhart, ¶ 12

27  ("[Operation Systems Engineers] install and support vendor-provided mainframe software.");

28  Declaration of Kristin Carlson, ¶ 6 ("Web Systems Engineers make configuration changes to

1    make sure that the system performs well and is secure . . . [and] install . . . enhancements.");

2    Declaration of Stephen Brown, ¶ 21 (suggesting that lower-level Information Security Engineers

3    "follow . . . standard operating procedures"); *id.*, ¶ 4 & 7 (noting that Information Security

4    Analysts "deal with policy and regulatory requirements" and "monitor Wells Fargo's security

5    systems 24 hours a day, 7 days a week").  This characterization is consistent with opt in Cassius

6    Conway's statements that his work as an Information Security Analyst satisfies the class

7    definition.  Conway Dec., ¶¶ 4, 9-10.

8           Likewise, Wells Fargo's brief and supporting declarations refer to several

9    subgroups within TIG that involve network support – Network Management Center, Network

10   Management Automation and Support, Network Capacity Group, Network Planning, Deposit

11   Operations and Call Center Technology ("DOCT"), Mainframe Application Support &

12   Engineering ("MASE"), Consumer Credit Technology Group, Information Security Technology.

13   *See* Def. Brf. at 26-27, 30; Laughlin Dec., ¶ 1; Brown Dec.).  These subgroups of TIG contain

14   Network Engineers and non-Network Engineers.  Production of organizational information and

15   substantive information regarding the work performed by technical support workers in these areas

16   would significantly advance the litigation.

17          Ultimately, even the TIG Human Resources Manager suggests a manageable scope

18   for discovery of non-Network Engineer positions.  She testifies that the "there are at least two

19   dozen positions titles . . . within TIG that *might arguably fit* within" the class definition set forth

20   in the complaint.  Lehan Dec., ¶ 10 (emphasis added).  If Wells Fargo has reviewed two dozen or

21   so job titles to assess whether they fit within the class definition, then Plaintiffs should have the

22   opportunity to review the underlying information and make their own assessment.  Furthermore,

23   because the work of gathering that information (so that Ms. Lehan could make that assessment) is

24   already completed, Wells Fargo cannot claim that such production would be burdensome.

25

26

27

28

1

      **B.**     **Wells Fargo's refusal to produce STAMP data in electronic form defies the Court's instruction last month.**

2

3

     Plaintiffs learned today that Wells Fargo does not intend to comply with the

Court's ruling that it produce timekeeping data in electronic spreadsheet form.  In the telephonic

4

hearing, the Court explained:

5

6

       Electronic Timekeeping Data:  To the extent it is not burdensome
       and it exists, you should turn it over.  If you want to make a
       showing as to how it is burdensome, you can make or try to make

7

       that showing.  But if it is a question of electronic production and
       you have done it for others and you can do it by making an query

8

       for additional people, then you should just do that.

9

Telephonic hearing of December 23, 2008, at 22:8-14.  It is admitted that these data exist, and

10

Wells Fargo has not argued that production would be burdensome.

11

     In its brief filed on Monday, Wells Fargo stated that "in light of the Court's

12

comments on these issues, . . . Wells Fargo will . . . produce STAMP records . . . ."  See

13

Defendant's Opposition Brief at 11:11-13.  Today, in response to a clarifying question from

14

Plaintiffs' counsel, Wells Fargo confessed that it does not intend to produce those documents

15

electronically, but will produce them only in hard copy.  Sagafi Dec., ¶ 6, Ex. D.  It reasoned as

16

follows:  "the STAMP system is an application developed by and is proprietary to Wells Fargo,

17

and therefore the electronic records themselves are sensitive and proprietary."  Id.

18

Notwithstanding the existence of a Confidentiality Order in this case, Plaintiffs immediately

19

explained that this logic does not support withholding the data, as the data do not appear to

20

contain trade secrets, nor do they appear to be burdensome to produce.  Id.; ¶ 7, Ex. E.

21

     Because these data are stored electronically in database form, have already been

22

produced for one year for the named Plaintiffs, and are highly relevant to both damages

23

calculations (for mediation purposes) and an assessment of the different tasks on which class

24

members spend their time, Plaintiffs request that Wells Fargo be ordered to comply with this

25

Court's directive at the December hearing.

26

**IV.**    **CONCLUSION**

27

     For the reasons set forth above, Plaintiffs respectfully request that the Court order

28

Wells Fargo to produce discovery with respect to all individuals who satisfy the class definition

1   set forth in the complaint, as well as STAMP timekeeping data for all potential class members in

2   electronic form, within thirty days.

3                                             Respectfully submitted,

4

5   Dated:  January 14, 2009               By:   _/s/ Jahan C. Sagafi_____
                                                   Jahan C. Sagafi
6
                                           Kelly M. Dermody (Cal. Bar No. 171716)
7                                          Jahan C. Sagafi (Cal. Bar No. 224887)
                                           LIEFF, CABRASER, HEIMANN &
8                                             BERNSTEIN, LLP
                                           275 Battery Street, 30th Floor
9                                          San Francisco, CA 94111-3339
                                           Telephone:  (415) 956-1000
10                                         Facsimile:   (415) 956-1008
                                           E-Mail: kdermody@lchb.com
11                                         E-Mail: jsagafi@lchb.com

12                                         Richard C. Haber (admitted *pro hac vice*)
                                           Laura L. Volpini (admitted *pro hac vice*)
13                                         HABER POLK LLP
                                           Eaton Center, Suite 620
14                                         1111 Superior Avenue
                                           Cleveland, Ohio 44114
15                                         Telephone:  (216) 241-0700
                                           Facsimile:   (216) 241-0739
16                                         E-Mail: rhaber@haberpolk.com
                                           E-Mail: lvolpini@haberpolk.com
17
                                           *Attorneys for Plaintiffs and the proposed Class*
18

19

20

21

22

23

24

25

26

27

28