Kelly M. Dermody (Cal. Bar No. 171716)
Jahan C. Sagafi (Cal. Bar No. 224887)
Barbra L. Williams (Cal. Bar No. 249967)
Heather H. Wong (Cal. Bar No. 238546)
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
E-Mail: kdermody@lchb.com
E-Mail: jsagafi@lchb.com
E-Mail: bwilliams@lchb.com
E-Mail: hwong@lchb.com

Richard C. Haber (admitted *pro hac vice*)
Laura L. Volpini (admitted *pro hac vice*)
HABER POLK LLP
Eaton Center, Suite 620
1111 Superior Avenue
Cleveland, Ohio 44114
Telephone:  (216) 241-0700
Facsimile:   (216) 241-0739
E-Mail: rhaber@haberpolk.com
E-Mail: lvolpini@haberpolk.com

*Attorneys for Plaintiffs and the proposed Class Members*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MARTIN LEWIS, AARON COOPER, and ANISSA SCHILLING, on behalf of themselves and a class of those similarly situated,<br><br>             Plaintiffs,<br><br>      v.<br><br>WELLS FARGO & CO.,<br><br>             Defendant. | Case No. 08-2670 CW<br><br>**REDACTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE**<br><br>Date:           October 29, 2009<br>Time:          2:00 p.m.<br>Courtroom:  2, 4th floor<br>Judge:         Honorable Claudia Wilken |

1

# TABLE OF CONTENTS

2

Page

3    MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

4        I.      INTRODUCTION ...................................................................................... 1

        II.     PROCEDURAL BACKGROUND............................................................... 2

5
                A.      Plaintiffs Filed A Collective And Class Action Complaint On
6                       Behalf Of A Nationwide Proposed Class Of Technical Support
                        Workers. ........................................................................................ 2

7               B.      Wells Fargo Resisted Producing Basic Discovery Necessary For
                        This Motion, Delaying Notice To The Class Members And
8                       Compromising Their FLSA Claims. .............................................. 2

9        III.    ARGUMENT .............................................................................................. 3

10              A.      Notice To Potential Opt-Ins, Decided On A Lenient Standard,
                        Facilitates Vindication Of Employees' Rights Through Collective
                        Adjudication Of Similar Claims. ................................................... 4

11
                        1.      The FLSA's Collective Action Structure Enables Similarly
12                              Situated Workers To Vindicate Their Rights By Pooling
                                Resources. .......................................................................... 4

13                      2.      Collective Action Certification Is A Two-Stage Process................. 5

14                      3.      First-Stage Certification Is Typically Granted On A "Very
                                Light" Or "Lenient" Standard, Based On Allegations
15                              Supported By Declarations. ............................................... 6

16              B.      Plaintiffs Easily Meet The Lenient "Similarly Situated" Standard
                        For Notice At This Early Stage Of The Litigation..................................... 8

17                      1.      The Class Members' And Wells Fargo's Statements
                                Confirm That They All Support The Technology
18                              Infrastructure, Sharing The Same Primary Job Duties.................... 8

19                              a.      Courts In This District And Elsewhere Routinely
                                        Hold That Employees In Multiple Similar Job
                                        Positions Can Be Similarly Situated. ................................. 8

20                              b.      The Opt-in Plaintiffs And Other Potential Opt-Ins
21                                      Share The Same Primary Duties Of Installing,
                                        Maintaining, And Supporting Wells Fargo's
22                                      Computer Systems. ........................................................... 10

                                c.      Wells Fargo's Own Statements Support A Finding
23                                      Of Similarity. ................................................................... 14

24                      2.      Plaintiffs Are Similarly Situated With Respect To Their
                                Overtime Backpay Claims. .......................................................... 15

25              C.      Plaintiffs' Proposed Notice Is The Best Notice Practicable To This
                        Class. ............................................................................................ 16

26                      1.      Plaintiffs' Proposed Notice Clearly Communicates The
27                              Rights At Stake In This Litigation And Class Members'
                                Options. ............................................................................ 16

28

- i -

**TABLE OF CONTENTS**
(continued)

Page

2. Individual Mailing, Coupled With E-Mailing, Will Ensure That Notice More Effectively Reaches Class Members To Inform Them Of Their Options.................................................. 17

D. Statute of Limitations Should Be Equitably Tolled. ................................ 18

1. Wells Fargo's Resistance To Providing Class Member Contact Information And Its Uncooperativeness In Discovery Each Support Equitable Tolling. ................................ 18

a. Plaintiffs Sought Basic Discovery From The Inception Of The Case. ...................................... 19

b. The Court Set A Reasonable Discovery And Briefing Schedule And Granted In Full Plaintiffs' Request For A Classwide Letter To Network Engineers To Facilitate Discovery. .................................. 19

c. Wells Fargo Failed To Produce Basic Documents, Leading To The Court's January 26 Order Setting Forth A Discovery Schedule. ............................................. 20

d. Wells Fargo Repeatedly Violated The January 26 Order, Leading To A Referral To Magistrate Judge Spero And Wells Fargo's Eventual Replacement Of Its Counsel......................................................................... 21

e. The Court Granted In Full Plaintiffs' Request For A Classwide Letter To Eight Additional Job Titles (The Non-Network Engineer Titles) To Facilitate Discovery. ........................................................... 22

2. Courts In This And Other Districts Routinely Grant Equitable Tolling In These Circumstances. .................................. 23

3. Plaintiffs Request Reasonable Tolling. ........................................ 23

IV. CONCLUSION ................................................................................. 24

- ii -

# TABLE OF AUTHORITIES

**Page**

### Cases

*Adams v. Inter-Con Sec. Sys.*,
242 F.R.D. 530 (N.D. Cal. 2007) ................................................................................... 23

*Baldozier v. Am. Family Mut. Ins. Co.*,
375 F. Supp. 2d 1089 (D. Colo. 2005) ........................................................................... 23

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
No. 06-0715 SC, 2007 U.S. Dist. LEXIS 21315, 2007 WL 707475 (N.D. Cal. March 6, 2007) 7

*Brown v. Money Tree Mortg., Inc.*,
222 F.R.D. 676 (D. Kan. 2004) ........................................................................................ 6

*Camp v. Progressive Corp.*,
No. Civ.A. 01-2680, 2002 WL 31496661 (E.D. La. Nov. 8, 2002) ............................... 9

*Carter v. Indianapolis Power & Light Co.*,
No. 1:02-CV-01812, 2003 WL 23142183 (S.D. Ind. Dec. 23, 2003) ............................ 8

*Champneys v. Ferguson Enters. Inc.*,
No: IP 02-535-C, 2003 U.S. Dist. LEXIS 4589, 2003 WL 1562219 (S.D. Ind. March 11, 2003) ................................................................................................................................ 9

*Church v. Consolidated Freightways, Inc.*,
137 F.R.D. 294 (N.D. Cal. 1991) ........................................................................... 5, 7, 8

*Cranney v. Carriage Services, Inc.*,
No. 2:07cv-1587-RLH-PAL, 2008 WL 608639 (D. Nev. Feb. 29, 2008) .................... 17

*Edwards v. City of Long Beach*,
467 F. Supp. 2d 986 (C.D. Cal. 2006) ............................................................................. 8

*Fasanelli v. Heartland Brewery, Inc.*,
516 F. Supp. 2d 317 (S.D.N.Y. 2007) ........................................................................... 17

*Fast v. Applebee's International, Inc.*,
No. 06-4146-CV-C-NKL, 2007 WL 1796205 (W.D. Mo. June 19, 2007) .................... 17

*Garner v. G. D. Searle Pharmaceuticals & Co.*,
802 F. Supp. 418 (M.D. Ala. 1991) ................................................................................. 6

*Gerlach v. Wells Fargo & Co.*,
No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823, 2006 WL 824652 (N.D. Cal. March 26, 2006) ....................................................................................................................... passim

*Gil v. Solectron Corp.*,
No. C-07-06414, 2009 U.S. DIST. LEXIS 3413, 2009 WL 88346 (N.D. Cal. Jan. 9, 2009) ...... 6

*Hallissey v. America Online, Inc.*,
No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ...................... 17

*Harrington v. Educ. Mgmt. Corp.*,
No. 02-CIV-0787, 2002 WL 1009463 (S.D.N.Y. May 17, 2002) ................................. 16

*Herring v. Hewitt Associates, Inc.*,
No. 06-267, 2007 U.S. Dist. LEXIS 53278, 2007 WL 2121693 (D.N.J. July 24, 2007) ........... 9

*Higazi v. Cadence Design Systems, Inc.*,
No. C-07-2813 JW (N.D. Cal. 2008) ............................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Hoffmann v. Sbarro*,
982 F. Supp. 249 (S.D.N.Y. 1997) ........................................................................ 7, 16

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) .............................................................................. 1, 2, 4, 5

*Labrie v. UPS Supply Chain Solutions, Inc.*,
No. C-08-3182 PJH, 2009 U.S. Dist. LEXIS 25210, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) ................................................................................................. 5

*Lynch v. United Services Auto. Ass'n.*,
491 F. Supp. 2d 357 (S.D.N.Y. 2007) ........................................................................ 4

*Madrid v. Peak Construction*,
2:09-cv-00311 JWS, 2009 U.S. Dist. LEXIS 77493 (D. Ariz. July 22, 2009) ......................... 23

*Masson v. Ecolab, Inc.*,
No. 04-CIV-4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ........................................ 7

*Morgan v. Family Dollar Stores, Inc.*,
551 F.3d 1233 (11th Cir. 2008) ............................................................................. 7

*Morton v. Valley Farm Transport, Inc.*,
No. C 06-2933 SI, 2007 WL 1113999 (N.D. Cal. April 13, 2007) ...................................... 7, 8

*Mowdy v. Beneto Bulk Transp.*,
No. 06-05682 MHP, 2008 U.S. Dist. LEXIS 26233, 2008 WL 901546 (N.D. Cal. March 31, 2008) ............................................................................................... 8, 23

*O'Donnell v. Vencor, Inc.*,
465 F.3d 1063 (9th Cir. 2006) ............................................................................. 18

*Owens v. Bethlehem Mines Corp.*,
630 F. Supp. 309 (S.D. W. Va. 1986) ...................................................................... 23

*Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757 (9th Cir. 1981),
abrogated on other grounds by *Hoffmann-La Roche*, 495 U.S. 165 ................................. 18, 23

*Realite v. Ark Rests. Corp.*,
7 F. Supp. 2d 303 (S.D.N.Y. 1998) .......................................................................... 9

*Romero v. Producers Dairy Foods, Inc.*,
235 F.R.D. 474 (E.D. Cal. 2006) ......................................................................... 5, 7

*Rosenburg v. IBM*,
Case No. CV 06-00430 PJH (N.D. Cal. 2006) ................................................................ 9

*Scott v. Aetna Servs., Inc.*,
210 F.R.D. 261 (D. Conn. 2002) ............................................................................ 9

*Stillman v. Staples, Inc.*,
No. 07 CV 849, 2007 U.S. Dist. LEXIS 58873 (D.N.J. July 30, 2007) .................................. 17

*Stoll v. Runyon*,
165 F.3d 1238 (9th Cir. 1999) ............................................................................ 18

*Thiessen v. Gen. Elec. Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) .......................................................................... 5, 6

*Underwood v. NMC Mortgage Corp.*,
245 F.R.D. 720 (D. Kan. 2007) ............................................................................ 17

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Valladon v. City of Oakland*,
   No. C-06-07478 SI, 2009 U.S. Dist. LEXIS 74439, 2009 WL 2591346 (N.D. Cal. Aug. 21,

4

   2009) ................................................................................................................................ 4

5

*Wong v. HSBC Mortg. Corp. (USA)*,
   No. C-07-2446 MMC, 2008 WL 753889 (N. D. Cal. March 19, 2008) ..................................... 7

6

*Wynn v. National Broadcasting Company, Inc.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................................. 5, 6

7

8

**Statutes**

9

29 U.S.C. § 216(b) ............................................................................................................. 1, 4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- v -

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3         By this Motion, Plaintiffs seek an order conditionally certifying this collective

4   action and granting leave to mail and e-mail notice of this action, pursuant to *Hoffmann-La*

5   *Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).  There are approximately 2,000 individuals

6   similarly situated to the three named Plaintiffs and the 27 additional Plaintiffs who have already

7   opted into the action by filing Consent to Join forms, pursuant to 29 U.S.C. § 216(b).[1]

8         Plaintiffs and the proposed collective action members are current and former Wells

9   Fargo technical support workers located throughout the United States.  Conditional certification is

10  appropriate under *Hoffman-La Roche* because the technical support workers are all similarly

11  situated with respect to their FLSA claim.  They each perform similar job duties and are

12  uniformly misclassified as exempt.

13        With this Motion, Plaintiffs present extensive evidence showing that the proposed

14  class members are similarly situated under the lenient collective action certification standard at

15  this early stage in discovery.  That evidence is found in Wells Fargo's own documents and the

16  declarations[2] and deposition testimony of the 28 Plaintiffs and potential class members

17  themselves.

18        Plaintiffs request an order that all individuals who have worked as exempt

19  Network Engineers, Operating Systems Engineers, Information Security Analysts, Technical

20  Service Specialists, Systems Support Analysts, Web Support Engineers, and Web Systems

21  Engineers[3] at any time since July 19, 2005 ("Technical Support Workers," "Collective Action

22

23  [1] Section 216(b) allows employees to bring an action in federal court to recover "their unpaid overtime compensation, [at 1.5x their hourly rate, and]. . . an additional equal amount as

24  liquidated damages."  29 U.S.C. § 216(b).  Any plaintiffs may bring such an action on "behalf of . . . themselves and other employees similarly situated."  *Id.*  Parties plaintiff must "give[] [their]

25  consent in writing" through court filing.  *Id.*

    [2] For ease of reference throughout this brief, all declarations are referred to as the "[Name]

26  Decl.," and all depositions are referred to as the "[Name] Dep."  The declarations are provided in the Compilation of Class Member Declarations.  The deposition excerpts are exhibits to the

27  Sagafi Decl.

    [3] This definition includes exempt predecessor titles of these positions during the Class period,

28  such as Web Engineer and Operating Systems Analyst.

Class Members," or simply "class members") be provided notice and an opportunity to join this collective action by filing Consent to Join forms within 120 days of the issuance of the notice. *Hoffmann-La Roche*, 493 U.S. at 172. Because Wells Fargo delayed Plaintiffs' efforts to notify similarly situated employees of this action and failed to comply timely with basic discovery obligations, resulting in an eight-month delay in the filing of this Motion, Plaintiffs also ask the Court to equitably toll the statute of limitations on their FLSA claims as of July 19, 2008, 30 days after the date on which Plaintiffs first requested such information from Wells Fargo.[4] Declaration of Jahan C. Sagafi in Support of Plaintiffs' Motion for Approval of *Hoffmann-La Roche* Notice ("Sagafi Decl."), ¶ 3, Ex. A.

## II.   PROCEDURAL BACKGROUND

### A.   Plaintiffs Filed A Collective And Class Action Complaint On Behalf Of A Nationwide Proposed Class Of Technical Support Workers.

On May 28, 2008, Plaintiffs filed the initial complaint seeking overtime pay under the FLSA and California law and related retirement benefits under ERISA. Plaintiffs pled their complaint as a collective and class action on behalf of a nationwide class of current and former technical support workers with the primary duties of installing, maintaining, and/or supporting computer software and/or hardware for Wells Fargo. *See* Complaint, ¶ 9 (Docket No. 1). On February 6, 2009, Plaintiffs filed their First Amended Complaint, which added Minnesota state law claims, a Minnesota Rule 23 class, and a new Plaintiff as a proposed class representative for the Minnesota class. On March 2, 2009, Plaintiffs filed their Second Amended Complaint ("SAC"), which made minor changes to four paragraphs in response to information from Wells Fargo. At no time was the class definition changed from that pled in the original Complaint.

### B.   Wells Fargo Resisted Producing Basic Discovery Necessary For This Motion, Delaying Notice To The Class Members And Compromising Their FLSA Claims.

As described more fully below in Section D.1.a., Plaintiffs first requested contact

---

[4] Wells Fargo voluntarily agreed to equitably toll the statute of limitations for Network Engineers from August 14, 2009 to September 24, 2009 to avoid the need for Plaintiffs to bring this motion in two parts (first for Network Engineers and then for the remaining job titles for which discovery has only recently been produced).

1    information for all potential class members on June 19, 2008, approximately three weeks after

2    filing the lawsuit.  Sagafi Decl., ¶ 3, Ex. A.  Plaintiffs never received this class member contact

3    information.  While Plaintiffs later prevailed in seeking dissemination of a neutral joint letter by a

4    third party administrator, such mailing was long delayed by Wells Fargo.  Wells Fargo provided

5    the information to a neutral third party on November 25, 2008 (Network Engineers only) and

6    August 5, 2009 (non-Network Engineers).  Sagafi Decl., ¶ 10.  Even that limited provision of

7    information has not afforded Plaintiffs the opportunity to contact potential class members,

8    because the contact information was not provided directly to them.

9            In addition, over the past fourteen months, Wells Fargo has resisted producing

10   basic discovery appropriate to this motion.  The Company ignored the September 2008 stipulated

11   schedule that set January 2009 for filing the collective action certification motion.  It then resisted

12   the Court's January 26, 2009 Order that provided a roadmap for getting discovery on track.

13   Wells Fargo then replaced its outside counsel, causing additional delay and necessitating

14   numerous meet and confers to generate the discovery recently produced.  These actions have

15   significantly delayed the filing of this motion.

16   **III.   ARGUMENT**

17           The accompanying evidence demonstrates that Wells Fargo Technical Support

18   Workers are similarly situated, satisfying the threshold for conditional collective action

19   certification.  Specifically, they are uniformly classified as exempt, and they all have the primary

20   duties of installing, maintaining, and/or supporting computer software and/or hardware for Wells

21   Fargo, as evidenced by their job descriptions, other Wells Fargo corporate documents, the class

22   members' own declaration and deposition testimony, and Wells Fargo's corporate

23   representative's admissions.  Whereas Wells Fargo's business is consumer and business banking,

24   investment management, insurance, and venture capital investment, the class members' work is to

25   keep the computer systems the businesspeople use up and running according to management's

26   and the business units' instructions.  *See, e.g.*, Declaration of Susan Lehan at 35:7-11 (testifying

27   that the purpose of Wells Fargo's Technology Information Group, or "TIG," which contains the

28   vast majority of the class members, is "[p]roviding technology support to Wells Fargo").

A.  **Notice To Potential Opt-Ins, Decided On A Lenient Standard, Facilitates Vindication Of Employees' Rights Through Collective Adjudication Of Similar Claims.**

1.  **The FLSA's Collective Action Structure Enables Similarly Situated Workers To Vindicate Their Rights By Pooling Resources.**

The FLSA requires that employers pay non-exempt employees overtime compensation of one and one-half times the regular rate of pay for all hours worked in excess of forty hours per week.  29 U.S.C. § 207.  To ensure compliance with federal labor law, the FLSA authorizes court actions by employees to recover unpaid overtime wages and an equal amount as liquidated damages for violation of the FLSA's overtime provisions.  29 U.S.C. § 216(b).

In addition to bringing individual suits, aggrieved employees may bring a collective action "on behalf of themselves and other employees similarly situated" who file written consents to join the action.[5]  *Valladon v. City of Oakland*, No. C-06-07478 SI, 2009 U.S. Dist. LEXIS 74439, at *22, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009) (citing 29 U.S.C. § 216(b)).  The statute of limitations runs on each employee's claims until her consent form is filed.  *Gerlach v. Wells Fargo & Co*., No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823, at *15, 2006 WL 824652, at *5 (N.D. Cal. March 28, 2006).

Allowing FLSA suits to proceed as collective actions furthers the goal of judicial economy.  Collective actions enable the "efficient resolution in one proceeding of common issues of law and fact."  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The alternative, a "multiplicity of duplicative suits," would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws.  *See Lynch v. United Services Auto. Ass'n.*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  Collective actions thus provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources."  *Hoffmann-La Roche, Inc.*, 493 U.S. at 170.  If relatively small claims are not

---

[5] Section 216(b) states, in part:  "An action to recover the liability [for unpaid overtime wages and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employees shall be [part of] any such action unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought."

1    pooled in a collective action, many claims will go unheard.  *Id.*

2              The United States Supreme Court has expressly held that trial courts have the

3    authority to help manage the process of joining additional parties in FLSA collective actions by

4    facilitating the sending of notice to potential collective action members early in the proceedings

5    informing them about the pendency of the action and their right to participate.  *Hoffmann-La*

6    *Roche, Inc.*, 493 U.S. at 165, 170-71; *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D.

7    Cal. 2007).  Court-supervised notice of an FLSA collective action ensures that the notification

8    procedure will be accomplished in an efficient, accurate manner.  *Hoffmann-La Roche, Inc.*, 493

9    U.S. at 170-71; *Labrie v. UPS Supply Chain Solutions, Inc.*, No. C-08-3182 PJH, 2009 U.S. Dist.

10   LEXIS 25210, at *21-22, 2009 WL 723599, at *7-8 (N.D. Cal. Mar. 18, 2009) ("The FLSA

11   requires the court to provide potential plaintiffs 'accurate and timely notice concerning the

12   pendency of the collective action, so that they can make informed decisions about whether to

13   participate.").  "Authorization of notice serves the legitimate goal of avoiding a multiplicity of

14   duplicative suits and setting cutoff dates to expedite disposition of the action."  *Id.* at *22.

15                  **2.     Collective Action Certification Is A Two-Stage Process.**

16              Collective action certification under the FLSA is a two-step process.  *Wynn v.*

17   *National Broadcasting Company, Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002); *Thiessen v.*

18   *Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).

19              At the initial "notice stage" – the current stage of this case – the court determines,

20   on the basis of pleadings and affidavits, whether to notify potential members of the collective that

21   the case is pending.  "The standard for certification at this stage is a lenient one that typically

22   results in certification."  *Gerlach*, 2006 WL 824652, at *2 (granting conditional certification)

23   (citing *Wynn*, 234 F. Supp. 2d at 1082); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474,

24   482 (E.D. Cal. 2006) ("The decision is made under a 'fairly lenient standard' and the usual result

25   is conditional class certification.") (citing *Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 467

26   (N.D. Cal. 2004) (Walker, J.) (granting conditional certification)); *Church v. Consolidated*

27   *Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (Jensen, J.) (finding notice appropriate

28   even though class members were employed at 112 different locations in 74 different jobs).

1   If a court finds that this standard is met, it conditionally certifies the case as a

2   collective action and orders dissemination of notice to the class members, allowing them an

3   opportunity to affirmatively opt in by filing Consent to Join forms.  *Wynn*, 234 F. Supp. 2d at

4   1082; *Garner v. G. D. Searle Pharmaceuticals & Co.*, 802 F. Supp. 418, 423 n.4 (M.D. Ala.

5   1991) ("A primary purpose of notification is to locate other similarly-situated employees who

6   may wish to bring their claims to the court's attention *before* this litigation is resolved.")

7   (emphasis in original).  The case proceeds as a representative action throughout the course of

8   discovery.[6]  At the conclusion of discovery, the district court may make a second stage

9   determination, if requested by the defendant, concerning whether all opt-in plaintiffs' claims

10  should be tried in a single proceeding.  *Thiessen*, 267 F.3d at 1102-03; *Brown v. Money Tree*

11  *Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

12        **3.    First-Stage Certification Is Typically Granted On A "Very Light" Or**
           **"Lenient" Standard, Based On Allegations Supported By Declarations.**
13

14  Plaintiffs far exceed their low burden of showing that they are similarly situated

15  with respect to their FLSA claims given their similar job duties and Wells Fargo's uniform

16  misclassification scheme, which classified all employees in these positions as exempt.

17  "[T]he standard for certification at the notice stage is a lenient one."  *Gerlach*,

18  2006 WL 824652, at *2 (citing *Wynn*, 234 F. Supp. 2d at 1082).  At this initial stage, plaintiffs

19  face only a minimal burden of showing that there exist class members who are "similarly

20  situated" to them.  *See Gil v. Solectron Corp.*, No. C-07-06414, 2009 U.S. DIST. LEXIS 3413, at

21  *6, 2009 WL 88346, at *2 (N.D. Cal. Jan. 9, 2009) ("At this first stage, the standard for

22  certification is very easy to satisfy: courts have required only 'substantial allegations, supported

23  by declarations or discovery, that the putative class members were together the victims of a single

24  decision, policy, or plan.'") (quoting *Thiessen*, 267 F.3d at 1102).  This standard "typically results

25  in certification."  *Gerlach*, 2006 WL 824652, at *2.  The "similarly situated" requirement "is

26  considerably less stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common

---

[6] As with class certification under Rule 23, conditional certification does not require any
adjudication of the merits of plaintiffs' claims.  *Thiessen*, 267 F.3d at 1106-07; *Garner*, 802 F.
Supp. at 422-23.

REDACTED MPA ISO PLAINTIFFS' MOTION FOR
APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE
CASE NO. 08-2670 CW

1    questions predominate." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D. Cal.

2    1991); *Hoffmann v. Sbarro*, 982 F. Supp. 249, 261, 263 (S.D.N.Y. 1997) (holding that the

3    FLSA's "similarly situated" standard is "not a stringent one," and the "type of judicial scrutiny

4    [that] may be required for Rule 23 class actions . . . is not required for collective actions under the

5    FLSA").

6           "Given that a motion for conditional certification usually comes before much, if

7    any, discovery, and is made in anticipation of a later more searching review, a movant bears a

8    very light burden in substantiating its allegations at this stage." *Beauperthuy v. 24 Hour Fitness*

9    *USA, Inc.*, No. 06-0715 SC, 2007 U.S. Dist. LEXIS 21315, at *20, 2007 WL 707475, at *5 (N.D.

10   Cal. March 6, 2007); *Gerlach*, 2006 WL 824652, at *2 (requiring "little more than substantial

11   allegations, supported by declarations or discovery").  Other courts have described the standard as

12   requiring only "detailed allegations supported by affidavits which 'successfully engage

13   defendants' affidavits to the contrary.'" *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474,

14   482 (E.D. Cal. 2006) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996));

15   *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 n.39 (11th Cir. 2008) (same quote);

16   *Morton v. Valley Farm Transport, Inc.*, No. C 06-2933 SI, 2007 WL 1113999, at *2 (N.D. Cal.

17   April 13, 2007) (same quote).

18          Courts in this district and elsewhere typically approve first-stage notice to multiple

19   positions based on substantial allegations coupled with few declarations.  *See, e.g.*, *Morton*, 2007

20   WL 1113999, at *1-2 (granting certification based on declarations of two named plaintiffs and

21   two opt-in class members, despite differences in class members' responsibilities and work

22   schedules); *Gerlach*, 2006 WL 824652 (granting certification based on no declarations and

23   deposition testimony); *Wong v. HSBC Mortg. Corp. (USA)*, No. C-07-2446 MMC, 2008 WL

24   753889, at *1 (N. D. Cal. March 19, 2008) (granting certification of all "loan officers," defined as

25   Senior Retail Mortgage Lending Consultants, Retail Mortgage Lending Consultants, and Premier

26   Mortgage Sales Officers based on 16 declarations); *Masson v. Ecolab, Inc.*, No. 04-CIV-4488,

27   2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) (approving notice to all employees who worked "as

28   a Route Manager, Sales Route Specialist, Service Professional, or other position whose job duties

1   primarily included repairing and providing preventive maintenance on leased commercial dish

2   washing machines" based on allegations of one named plaintiff and two opt-ins); *Carter v.*

3   *Indianapolis Power & Light Co.*, No. 1:02-CV-01812, 2003 WL 23142183 (S.D. Ind. Dec. 23,

4   2003) (approving notice to all employees who worked in "various positions such as supervisor,

5   foreman, [and] management trainer" based on three affidavits and one opt-in).

6        Here, Plaintiffs have more than satisfied that lenient standard.

7   **B.**    **Plaintiffs Easily Meet The Lenient "Similarly Situated" Standard For Notice At This Early Stage Of The Litigation.**

8

9        The collective action class members are similarly situated, based on (1) their

10   shared primary job duties of installing, maintaining, or supporting the technical infrastructure, (2)

11   Wells Fargo's uniform policy of misclassifying them as exempt, and (3) Wells Fargo's consistent

12   requirement that they work overtime.

13       **1.**    **The Class Members' And Wells Fargo's Statements Confirm That They All Support The Technology Infrastructure, Sharing The Same Primary Job Duties.**

14

15           **a.**    **Courts In This District And Elsewhere Routinely Hold That Employees In Multiple Similar Job Positions Can Be Similarly Situated.**

16

17        The collective action class members all hold similar job positions, performing non-

18   managerial technical support work that does not involve running Wells Fargo's business.  It is

19   important to note that "plaintiffs need show only that their positions are similar, not identical, to

20   the positions held by the putative class members."  *Morton v. Valley Farm Transport, Inc.*, No. C

21   06-2933 SI, 2007 WL 1113999, at *2 (N.D. Cal. April 13, 2007) (quoting *Grayson v. K Mart*

22   *Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *Mowdy v. Beneto Bulk Transp.*, No. 06-05682 MHP,

23   2008 U.S. Dist. LEXIS 26233, at *7, 2008 WL 901546, at *2 (N.D. Cal. March 31, 2008)

24   (holding that positions need only be "similar, not identical") (internal quotations and citations

25   omitted); *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 298 (N.D. Cal. 1991) (FLSA

26   notice-stage certification appropriate even though class members employed at 112 different

27   locations in 74 different jobs); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D.

28   Cal. 2006) ("'Plaintiff need not show that his position is or was identical to the putative class

1    members' positions; a class may be certified under the FLSA if the named plaintiff can show that

2    his position was or is similar to those of the absent class members.'") (quoting *Freeman v. Wal-*

3    *Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)); *Herring v. Hewitt Associates,*

4    *Inc.*, No. 06-267, 2007 U.S. Dist. LEXIS 53278, 2007 WL 2121693, at *1, *6 (D.N.J. July 24,

5    2007) (granting certification as to three job titles, each with its own job code, though both

6    plaintiffs held a single title); *Champneys v. Ferguson Enters. Inc.*, No. IP 02-535-C, 2003 U.S.

7    Dist. LEXIS 4589, at *13-14, 2003 WL 1562219, at *5-6 (S.D. Ind. March 11, 2003) (granting

8    certification for class of "thousands" of employees "who performed similar functions," based in

9    part on two class members providing affidavits as to "similar job descriptions"); *Camp v.*

10   *Progressive Corp.*, No. Civ.A. 01-2680, 2002 WL 31496661, at *4-5 (E.D. La. Nov. 8, 2002)

11   (granting certification for 6 job titles despite plaintiff holding only 3 positions and defendant

12   producing evidence that class members had "different pay grades and allegedly very different job

13   duties"); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) (conditionally certifying

14   a class of employees that included waitstaff, bartenders, servers, busboys, back waitstaff, kitchen

15   workers, porters, dishwashers, cooks, assistant cooks, salad makers, mixers-bakers, pizza makers,

16   prep cooks, and security guards).

17          In fact, class actions challenging the misclassification of technical support workers

18   often embrace multiple titles.  *See Gerlach*, 2006 WL 824652 (granting collective action

19   certification of a class of technical support workers in 3 job titles); *Scott v. Aetna Servs., Inc.*, 210

20   F.R.D. 261 (D. Conn. 2002) (certifying FLSA opt-in class and Rule 23 opt-out class comprised of

21   computer "Systems Engineers" in different job codes where record showed all plaintiffs

22   performed same type of job duties, even though specific duties and assignments were not

23   identical); *Higazi v. Cadence Design Systems, Inc.*, No. C-07-2813 JW (N.D. Cal. April 25, 2008)

24   (approving settlement class of 14 job titles under the FLSA and Rule 23) (attached to Sagafi Decl.

25   as Ex. Z); *Rosenburg v. IBM*, Case No. CV 06-00430 PJH, 2007 WL 128232, at *2 (N.D. Cal.

26   Jan. 11, 2007) (approving FLSA and Rule 23 settlement classes of technical support workers in

27   two job families covering many different specific job titles in 10 "Covered Position Codes").

28

1

                **b.**    **The Opt-in Plaintiffs And Other Potential Opt-Ins Share The Same Primary Duties Of Installing, Maintaining, And Supporting Wells Fargo's Computer Systems.**

2

3          Here, the 27 Plaintiffs and class members consistently and explicitly testify that

4 regardless of the titles they hold, they are similarly situated with respect to their primary duties of

5 installing, maintaining, and supporting Wells Fargo's computer systems.  All class members hold

6 technical support jobs in the Technology Job Family and have been categorically classified as

7 exempt from overtime compensation.

8          All are squarely on the technical, non-"administrative" side of the business they

9 support; they do not make business decisions.[7]  They use skill and training to apply procedures,

10 tools, and technical operating standards to make sure that computer systems perform their

11 intended functions as they have been designed to do.[8]

12          All class members have only limited authority and "decision" making, playing a

13 support role as they implement the instructions of others.  They all are similarly controlled to a

14 substantial degree by common types of procedures, approved processes, checklists, and standards,

15 as well as by the inherent technical constraints of the systems they service.[9]  These procedures

16

17 [7] Ballew Decl., ¶ 7; Brox Decl., ¶ 7; Choi Decl., ¶ 7; Cooper Decl., ¶ 8; Gardner Decl., ¶ 8; Hearn Decl., 7; Huff Decl., ¶ 7; Kauffman Decl., ¶ 7; LaMasters Decl., ¶ 8; Palmateer Decl., ¶ 8; Petrone Decl., ¶ 8; Schmitt Decl., ¶ 8; Sehnert Decl., ¶ 8; Severns Decl., ¶ 7; Shaikh Decl., ¶ 8;

18 Sharma Decl., ¶ 8; Vanderbeck Decl., ¶ 6; Wior Decl., ¶ 7.

19 [8] Ballew Decl., ¶ 5; Brox Decl., ¶ 5; Choi Decl., ¶ 5; Conway Decl., ¶ 7; Cooper Decl., ¶ 6; Gardner Decl., ¶ 6; Hearn Decl., 5; Huff Decl., ¶ 5; Kauffman Decl., ¶ 5; LaMasters Decl., ¶ 6;

20 Palmateer Decl., ¶ 6; Petrone Decl., ¶ 6; Schmitt Decl., ¶ 5; Sehnert Decl., ¶ 6; Severns Decl., ¶ 5; Sharma Decl., ¶ 6; Vanderbeck Decl., ¶ 4; Wior Decl., ¶ 5.

21 [9] Abundo Decl., ¶¶ 11-13 ("These processes and procedures were spelled out in detailed steps in

22 the Production Support Group Wiki, which is a complication of several hundred hyperlinked documents that instructed me and my fellow Web Engineers and Web Support Engineers how to

23 handle countless recurring tasks we were assigned."); Ballew Decl., ¶¶ 8-9; Brox Decl., ¶¶ 8-9; Choi Decl., ¶ 8 (describing reliance on "a manual of documents listing the correct procedures");

24 Cooper Decl., ¶¶ 9-10 ("[P]rocesses and procedures were spelled out in detailed steps . . . in Wells Fargo's Monsoon intranet system . . . I relied on documents in Monsoon to tell me how to

25 perform many of the repetitive tasks that I was required to perform."); Conway Decl., ¶¶ 8-9; Cooper Dep., at 55:6-9 ("[T]he peer review group would work to cross – you know, make sure I

26 crossed my Ts, dotted my Is, and made sure I did everything within our proper procedures and the way things were expected to be done."); Douty Decl., ¶ 8; Gardner Decl., ¶ 9-10; Hearn Decl.,

27 ¶ 8-9 ("There was an operations manual that included procedural, policy, roles & responsibilities, and informational documentation as well as network and system diagrams."); Huff Decl., ¶¶ 8-9

28 (describing reliance on "Wells Fargo playbooks" and other sources); Kadannapalli Decl., ¶¶ 10-

REDACTED MPA ISO PLAINTIFFS' MOTION FOR
APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE
CASE NO. 08-2670 CW

1    governing the class members' work, which apply across class members, are maintained in

2    centralized databases accessible to class members.

3             In addition, the class members are subject to strict change control procedures that

4    preclude them from making significant changes to the computer systems without detailed, explicit

5    authorization.[10]  The change control procedures limit all class members' discretion.  Specifically,

6    the Technology Change Management Policy requires that "[a]ll changes to Wells Fargo

7    production systems must be formally managed in a controlled manner. . . .  [T]echnology

8    management groups . . . will follow a standard, risk-driven change methodology that ensures all

9    changes are appropriate, authorized, tested, approved by management, planned for, documented,

10   and communicated to all affected groups."  Sagafi Decl., ¶ 23, Ex. O (WFB 0001505-10 at 1505).

11   The Policy explains that "All Wells Fargo business and technology units and functions that may

12   be involved with any change to the Wells Fargo production systems or environment are affected

13

14   12; LaMasters Dep., at 63:6-11 (testifying that projects are taken "through the regular procedures
     and processes"); LaMasters Decl., ¶ 9; Lovelady Decl., at 67:2-4 (testifying that there is "a
15   standard procedure for everything new that gets introduced to the enterprise."); Palmateer Decl.,
     ¶¶ 9-10; Petrone Decl., ¶ 9; Petrone Dep., at 50:5-10 ("[T]here was a set of procedures to follow
16   and it's set by Wells Fargo."); Schilling Decl., ¶¶ 9-10 ("I was required to follow regimented
     protocols and guidelines for almost all of the tasks I performed."); Schilling Dep., at 187:3-8
17   (testifying that Wells Fargo policies dictated when she could perform certain activities); Schmitt
     Decl., ¶¶ 9-10; Sehnert Decl., ¶¶ 9-10; Severns Decl., ¶¶ 8-9 (testifying that the specific processes
18   and procedures he was required to follow were spelled out in detailed steps in Wells Fargo
     documents); Shaikh Decl., ¶¶ 9-10. Kauffman Decl., ¶¶  8-10 ("I relied on this operations manual
19   [listing the correct procedures] to tell me how to perform many of the repetitive tasks I was
     required to perform."); Sharma Decl., ¶¶ 9-10 (testifying that he was required to follow strict
20   procedures "spelled out in detailed steps in documentation" made available by management);
     Vanderbeck Decl., ¶¶ 7-8 ("These processes and procedures were spelled out in detailed steps in
21   the operations manuals."); Wior Decl., ¶¶ 8-9 (testifying that Wells Fargo provided him with
     written instructions on how to resolve service request tickets, available on the intranet).
22   [10] Abundo Decl., ¶ 17; Ballew Decl., ¶ 13, LaMasters Decl., ¶ 13; Brox Decl., ¶ 13; Choi Decl.,
23   ¶ 13 ("Strict change control procedures governed how and when Wells Fargo systems could be
     interrupted or modified"); Cooper Decl., ¶¶ 11, 13 ("I constantly had to get permission, through
24   the change control process discussed below, to do tasks as simple as changing a setting on a
     firewall or router."); Douty Decl., ¶ 11; Gardner Decl., ¶ 14; Hearn Decl., ¶13; Huff Decl., ¶ 16;
25   Kadannapalli Decl., ¶ 16; Kauffman Decl., ¶ 15; Palmateer Decl., ¶ 16; Petrone Decl., ¶ 11;
     Schilling Dep., at 186:16-18 ("There were restrictions, policies, procedures, identified within the
26   enterprise change management system that we were required to adhere to."); Schmitt Decl., ¶ 15-
27   16; Sehnert Decl., ¶ 17-18; Severns Decl., ¶ 12; Shaikh Decl., ¶ 15; Sharma Decl., ¶¶ 14-15;
     Vanderbeck Decl., ¶ 12; Wior Decl., ¶¶ 14-15.

28

840229.1                                    - 11 -

by this policy," and that any exceptions "must be approved by the business group's Chief Risk

Officer." *Id.* (WFB 0001505 & 08).  Wells Fargo also maintains a 78-page document titled "TIG

Change Management Standards and Process" that "

," and "

." *Id.*, ¶ 24, Ex. P (WFB 0001511-88 at 1516).  "

." *Id.* (WFB 0001519).

The class members are assigned trouble tickets and service requests.[11]  Wells

Fargo corporate documents explain that the trouble ticket system described by class members,

"                                                                                                                                    ."

Sagafi Decl., ¶ 25, Ex. Q (WFLW 013233-35 at 3233).  The class members are required to

respond to those tickets and resolve the problems they describe within strict deadlines, which are

dictated by contracts with the internal clients they service called service level agreements, or

SLAs.[12]

The class members do not hire, fire, evaluate, or discipline other employees.  They

---

[11] Abundo Decl., ¶ 16 ("[I]f I did not fix the problem listed in the ticket or escalate the ticket right
away (within approximately 15 minutes in most cases) in compliance with the SLA and other
requirements, management would immediately notice it, and I would be reprimanded."); Ballew
Decl., ¶¶ 11-12; Brox Decl., ¶¶ 11-12; Choi Decl., ¶ 12 ("Our manager reviewed the number of
tickets received and the time that lapsed between the customer's opening the ticket and our
closing the ticket."); Cooper Decl., ¶ 12; Douty Decl., ¶ 10; Hearn Decl., ¶ 12; Kauffman Decl.,
¶¶ 12-14; LaMasters Decl., ¶¶ 11-12; Palmateer Decl., ¶¶ 13-15 ("Management reviewed our
progress in resolving problems we were assigned."); Petrone Decl., ¶ 6; Schilling Dep., at 83:4-7;
Schilling Decl., ¶ 8; Schmitt Decl., ¶¶ 12-13; Shaikh Decl., ¶ 14; Sharma Decl., ¶¶ 12-13;
Vanderbeck Decl., ¶ 10; Wior Decl., ¶ 11.
[12] Ballew Decl., ¶ 11; Brox Decl., ¶ 11; Choi Decl., ¶¶11-12; Cooper Decl., ¶ 12; Hearn Decl.,
¶¶ 11-12 ("The manager wanted us to close the tickets within the parameters of the appropriate
SLA."); Huff Decl., ¶¶ 11-13 ("For example, I was required to respond to a ticket assigned a
severity level of 3 within one hour and resolve the problem within 12 hours."); Kadannapalli
Decl., ¶ 15 ("Wells Fargo said I was terminated for failing to meet such a [trouble ticket]
deadline."); Kauffman Decl., ¶¶ 12-14 ; Schilling Dep., at 107:1 ("[Our team] had SLAs that we
had to meet."); Vanderbeck Decl., ¶ 11; Wior Decl., ¶ 12.

1  do not develop, design, price, sell, or market Wells Fargo's services or products.  They do not

2  create or establish business operational or management policies for Wells Fargo.  Nor do they

3  make final decisions regarding what type of software or hardware to purchase or implement.

4  Likewise, they do not design hardware, software, or systems.[13]

5         Class members have testified to the similarity between and among various

6  positions, including between Network Engineers and Information Security Analysts;[14] Network

7  Engineers and Operations Systems Engineers;[15] Information Security Analysts, Network

8  Engineers, and Operating Systems Engineers;[16] Operating Systems Engineers, Information

9  Security Analysts, and System Support Analysts;[17] Operating Systems Engineers, Web Systems

10  Engineers, and Web Support Engineers;[18] Web Support Engineers, Web Systems Engineers,

11  Information Security Analysts, and Operating Systems Engineers,[19] and Web Systems Engineers

12  and Systems Support Analysts.[20]

13         In sum, regardless of what part of the Wells Fargo technical infrastructure they

14  support, all class members have the primary duty of performing repetitive, routine lower-level

15  technical computer installation, maintenance, and support work.[21]  Specific differences in the

16  _____

17  [13] See, *supra*, FN 7.
[14] Ballew Decl., ¶ 15; Conway Decl., ¶ 10; Lewis Dep., at 302:1 (testifying that Information

18  Security Analysts and Network Engineers "did the same jobs"); *id.* at 72:6-12 (describing participation of ISAs and NEs in team meetings as "identical"); *id.* at 74:19-20 (noting that he did

19  not "know who was an ISA versus an NE"); Lovelady Decl., ¶¶ 4 & 10(b) (testifying that he, other Network Engineers, and other Information Security Analysts with whom he worked "do the

20  same kind of work," meaning having "the primary duty of supporting and maintaining Wells Fargo's hardware and software").

21  [15] Dace Decl., ¶ 17-18  (testifying that he, other Network Engineers,  Operations Systems Engineers and Database Analysts, all "installed, maintained, and/or supported Wells Fargo's

22  computer hardware and/or software.").
[16] Severns Decl., ¶ 14 (testifying that he, other Information Security Analysts, Network

23  Engineers, and Operating Systems Engineers all worked together to "install [the actual hardware into the data centers] in accordance with Wells Fargo's Security Policy).

24  [17] Huff Decl., ¶ 22.
[18] Schmitt Decl., ¶ 19.

25  [19] Abundo Decl, ¶ 17; Kadannapalli Decl., ¶¶ 17-18.

26  [20] Wior Decl, ¶ 17.a (testifying that he, other Web Systems Engineers, and Systems Support Analysts "work on server builds using the server build docs" and "respond to support requests").

27  [21] Ballew Decl., ¶ 11; Brox Decl., ¶ 10; Choi Decl., ¶ 9; Conway Decl., ¶ 9; Cooper Decl., ¶ 11; Cooper Dep., at 105:24-106:2 (testifying that updating design templates "was rather routine and

28  mundane work"); Douty Decl.,¶9; Gardner Decl., ¶ 11; Hearn Decl., ¶10; Huff Decl., ¶ 10 ("My

1    details and minutiae of their work – e.g., the specific part of the system on which they work – are

2    immaterial to whether they are improperly misclassified.

3                        **c.    Wells Fargo's Own Statements Support A Finding Of
                                 Similarity.**

4

5                        The similarity of these positions is underscored by Wells Fargo's own statements.

6    Plaintiff Martin Lewis's manager informed him that there is "no difference" between Information

7    Security Analysts and Network Engineers.  Deposition of Martin Lewis, at 292:19-24.

8    Furthermore, the class positions are all grouped within the Technology Job Family, one of the

9    many dozens of job families within Wells Fargo.  Deposition of Susan Lehan, at 173:20.  In

10   contrast, employees in non-class job positions perform very different work, in recognition of

11   which Wells Fargo organizes them in different job families, such as Risk Management,

12   Accounting, Program Management, and Operations.  *Id.* at 171:25-172:2.  As recognized by their

13   placement within the Technology Job Family, the class members are assigned to work in

14   technical support roles, as opposed to strategic planning, for example.  *Id.* at 65:9-13; 77:20-23;

15   78:2-6.

16                       Wells Fargo's own job descriptions demonstrate that the collective action class

17   _____

18   fellow OSEs and I were repairmen, not designers"); Kadannapalli Decl., ¶ 14 (testifying that his
     job was "baby-sitting" the systems for which he was responsible.); Kauffman Decl., ¶ 17 ("My

19   fellow TSSs and I served as gears in a machine"); LaMasters Dep., at 44:1-2 (testifying that only
     a "basic familiarity with network technology and terminology" is necessary for a person to

20   understand the designs and templates); *id.* 87:2-4 ("Most of what we deal with is pretty routine.
     It's the same types of things over and over."); LaMasters Decl., ¶ 11; Palmateer Decl., ¶¶ 11-12;

21   Petrone Decl., ¶ 10; Petrone Dep., at 71:10-15 (testifying that his job is "very routine" and that
     "we have standards how things are to be set up and just follow the routine"); Schilling Dep.,

22   79:15-20 ("[T]o be perfectly honest, the job responsibilities that I performed, you could really, in
     a nutshell, give somebody the EFO Region 4 network implementation for dummies book.  It was

23   very basic, very repetitive, very controlled, structured, regurgitated."); Schilling Decl., ¶ 10;
     Severns Decl, ¶ 10 (testifying that he performed "the same tasks over and over again, following

24   the same basic steps, procedures, or instructions each time, and using the same basic tools and
     skills each time," and "saw [himself] as the middle man" who went out and gathered information,

25   compiled it, and passed it on to his manager); Schmitt Decl., ¶ 11; Sehnert Decl., ¶¶ 14-15;
     Shaikh Decl., ¶ 12 ("The developers and Project manager map out everything that will need to be

26   done and I am required to follow their instructions step by step."); Sharma Decl., ¶ 11 (testifying
     that he is "just an operator, and the instructions I follow are based upon the instructions provided

27   by others," and his managers have said, "Anybody can do this"); Vanderbeck Decl., ¶ ("I served
     as a translator, not a developer"); Wior Decl., ¶ 10.

28

1  members perform the same core duties.  A summary of the relevant portions of the job

2  descriptions and the descriptions themselves are attached to the Sagafi Declaration as Exhibit R.

3  The uniform job descriptions for each of the seven positions show that the employees play similar

4  roles in maintaining the technical infrastructure of the Company.  For example, Technical

5  Services Specialists "support[] . . . hardware and software."  WFB 0003720.  System Support

6  Analysts provide "computer solutions."  WFB 0003719.  Other employees support specific parts

7  of the technology infrastructure.  Network Engineers "support . . . [the] voice and/or data

8  communications systems."  WFB 0002258.  Operating Systems Engineers "support . . . operating

9  systems."  WFB 0003727.  Information Security Analysts "implement security standards" and

10  troubleshoot "data security incidents."  WFB 0003729.  Web Systems Engineers support

11  "application servers and web servers."  WFB 0003724.  Likewise, Web Support Engineers

12  "support[] the online site infrastructure."  WFB 0008033.  In short, the work performed by the

13  class members is similar.

14              **2.      <u>Plaintiffs Are Similarly Situated With Respect To Their Overtime
                            Backpay Claims.</u>**

15

16              Plaintiffs and class members also satisfy their "minimal" burden of showing that

17  they are similarly situated because they were subjected to a common policy or plan that required

18  all putative class members to work more than forty hours per week without being paid overtime

19  compensation and were denied back pay and were re-classified.  Wells Fargo regularly required

20  or expected employees to work more than forty hours per week without paying overtime

21  compensation to its employees.[22]  Plaintiffs and the 27 Collective Action Members from

22  throughout Wells Fargo's organization have submitted declarations showing that they regularly

23  worked more than forty hours per week when classified as exempt, but were denied overtime

24  compensation.  These workers are all similarly situated with respect to their entitlement to back

25  pay.

26  _____

27  [22] Abundo Decl ¶¶ 6; Ballew Decl., ¶ 4; Brox Decl., ¶ 4; Choi Decl., ¶ 4; Conway Decl., ¶ 4;
    Douty Decl., ¶ 4; Gardner Decl., ¶ 5; Hearn Decl., ¶ 4; Huff Decl., ¶ 4; Kadannapalli Decl., ¶¶ 22-

28  25; Kauffman Decl., ¶ 4; Palmateer Decl., ¶ 5; Schmitt Decl., ¶ 5; Sehnert Decl., ¶ 5; Severns
    Decl., ¶ 4; Shaikh Decl., ¶¶ 5; Sharma Decl., ¶ 5; Vanderbeck Decl., ¶ 3; Wior Decl., ¶ 4.

1      Plaintiffs have "made substantial allegations of a uniform, widespread policy" that

2  are "factually supported by [Wells Fargo's] own admissions" and class member declarations.

3  *Hoffmann*, 982 F. Supp. at 262; *Wong*, 2008 WL 753889, at *3 (granting conditional certification

4  based on 16 declarations from plaintiffs and opt-ins); *Harrington v. Educ. Mgmt. Corp.*, No. 02-

5  CIV-0787, 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002) (holding that plaintiff's "modest

6  preliminary burden" was satisfied by affidavit stating that "his supervisors informed him that it

7  was defendants' policy not to pay [plaintiffs] overtime compensation because the position was

8  classified as exempt"). Plaintiffs have more than satisfied the requisite "modest factual showing"

9  and provided this Court a reasonable basis for their allegation that a class of similarly situated

10  persons exists.

11      Here, Plaintiffs amply satisfy the standards for conditional certification. The

12  allegations and evidence submitted constitute the factual or legal nexus that binds the collective

13  action class members together as victims of Wells Fargo's uniform misclassification policy, in a

14  way that justifies hearing their claims together. Collective procedural treatment promotes both

15  judicial efficiency and the FLSA's broad remedial policies.

    **C.**    **Plaintiffs' Proposed Notice Is The Best Notice Practicable To This Class.**

        **1.**    **Plaintiffs' Proposed Notice Clearly Communicates The Rights At Stake In This Litigation And Class Members' Options.**

19      Plaintiffs propose a neutral and straightforward form of Notice, which will inform

20  prospective Plaintiffs of their statutory opt-in rights. [Proposed] Order Granting Plaintiffs'

21  Motion For Approval Of *Hoffmann-La Roche* Notice, Ex. A. The proposed Notice explains the

22  nature of the action, Plaintiffs' allegations, and Wells Fargo's denial of liability. It makes clear

23  that the Court has not adjudicated the merits of the dispute. The Notice also identifies a website

24  at which individuals considering their options can obtain further information. The Notice

25  provides Plaintiffs' counsel's contact information, so that potential plaintiffs can speak with the

26  attorneys whom they would be designating to represent them should they choose to opt in.

27      Lastly, the Notice summarizes potential Plaintiffs' options. It makes clear that

28  individuals are free to select their own counsel. It also warns that those parties Plaintiffs who do

1   opt in will be bound by the resulting judgment, whether favorable or unfavorable.  The notice

2   attaches substantially the same Consent To Join Form that other opt-in Plaintiffs have used

3   already to opt into the lawsuit.

**2.  Individual Mailing, Coupled With E-Mailing, Will Ensure That Notice More Effectively Reaches Class Members To Inform Them Of Their Options.**

6   In addition to the individually mailed Notice, e-mailing of the Notice will help

7   ensure that the Court-ordered Notice will be effective in reaching prospective plaintiffs and

8   informing them of their rights.  For various reasons, mailed Notice inevitably fails to reach every

9   single class member.  Corporate address databases have some errors.  Working people, deluged

10  with mail and busy with the concerns of daily life, may not recognize the Court-issued Notice in a

11  pile of junk mail and bills.  It is also inevitable that some recipients will misunderstand the

12  Notice's significance or requirements.

13  One solution is to provide multiple means of Notice:  *e.g.*, by mail and e-mail.  E-

14  mail is efficient and inexpensive.  Furthermore, this method promotes the communication of the

15  Court's message to class members by taking a careful real-world "belt-and-suspenders" approach

16  to effectuating Notice.  Therefore, Plaintiffs propose that Wells Fargo either send Notice by e-

17  mail to current employees or provide current class members' e-mail addresses to Plaintiffs'

18  counsel to do so.

19  Courts are increasingly approving the inclusion of e-mail addresses with other

20  contact information on certification, in recognition of the growing preference for communication

21  by that method.  *See, e.g.*, *Cranney v. Carriage Services, Inc.*, No. 2:07cv-1587-RLH-PAL, 2008

22  WL 608639, at *5  (D. Nev. Feb. 29, 2008) (ordering production of e-mail addresses and

23  telephone numbers with other contact information on certification); *Fast v. Applebee's*

24  *International, Inc.,* 243 F.R.D. 360 (W.D. Mo. 2007) (same); *Underwood v. NMC Mortgage*

25  *Corp.*, 245 F.R.D. 720 (D. Kan. 2007) (same); *Stillman v. Staples, Inc.*, No. 07 CV 849, 2007

26  U.S. Dist. LEXIS 58873 (D.N.J. July 30, 2007) (same); *Fasanelli v. Heartland Brewery, Inc.*, 516

27  F. Supp. 2d 317 (S.D.N.Y. 2007) (ordering production of e-mail addresses *sua sponte*); *Hallissey*

28  *v. America Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008)

1    (ordering production of e-mail addresses).

2              Here, Plaintiffs propose sending the Notice by regular mail and e-mail.  This will

3    improve the effectiveness of the Notice, both by maximizing the chances that class members will

4    see it and by emphasizing its legitimacy, since it will be presented in an official, authoritative

5    context.  Wells Fargo's participation in disseminating the Court's Notice will also make apparent

6    to its employees its commitment to abiding by the FLSA's fair pay requirements.

7         **D.        Statute of Limitations Should Be Equitably Tolled.**

8              Under the FLSA, the statute of limitations for each individual party plaintiff is not

9    tolled until he or she files written consent to join the action, or until the court issues an equitable

10   tolling order.  29 U.S.C. § 216(b); *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645

11   F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche,* 495 U.S. 165.

12   However, equitable tolling is appropriate under the FLSA where similarly situated plaintiffs,

13   through no fault of their own, have been unable to join the lawsuit.  "Equitable tolling applies

14   when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the

15   defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible

16   to file a claim on time," such as its excusable ignorance of the statute of limitations.  *Stoll v.*

17   *Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068

18   (9th Cir. 2006) (applying the doctrine when "defendants created the situation which impeded" the

19   plaintiff's filing of her claim).

20        **1.        Wells Fargo's Resistance To Providing Class Member Contact**
              **Information And Its Uncooperativeness In Discovery Each Support**
21            **Equitable Tolling.**

22             Here, either of two circumstances independently warrant equitable tolling:  (1)

23   Wells Fargo's resistance to providing class member contact information and its delay in even

24   providing such information to a third party administrator until months or a year after the initial

25   request; and (2) Wells Fargo's refusal timely to produce basic, core discovery appropriate to this

26   motion.

27

28

840229.1                                          - 18 -

a.      **Plaintiffs Sought Basic Discovery From The Inception Of The Case.**

Immediately after filing the initial Complaint, Plaintiffs requested class member contact information or tolling, to allow potential opt-in plaintiffs the opportunity to protect their rights.  On June 19, 2008, Plaintiffs sent a letter to Wells Fargo's in-house counsel requesting that Wells Fargo, in the alternative, either (1) produce potential collective action class members' contact information to enable Plaintiffs to alert them to the pendency of the action, or (2) stipulate to tolling of the class members' statutes of limitations.  *See* Sagafi Decl., ¶ 3, Ex. A.  Plaintiffs received no response.  On July 3, 2008, Plaintiffs reiterated the request.  *Id.*, ¶ 4, Ex. B.  On July 9, 2008, Wells Fargo rejected Plaintiffs' requests.  *Id.*, ¶ 5, Ex. C.

Plaintiffs sought clearly prioritized, basic discovery from the opening moments of litigation.  On July 30, 2008, the day before the Rule 26(f) initial meet and confer session, Plaintiffs informed Wells Fargo of the most important categories of documents to be produced on a priority basis.  Sagafi Decl., ¶ 6, Ex. D.  On July 31, 2008, the day of the conference, Plaintiffs sent a more detailed letter outlining eight targeted categories of requested documents.  *Id.*, ¶ 7, Ex. E.  That day, Plaintiffs also served their First Set of Requests for Production of Documents.  *Id.*, ¶ 8, Ex. F.  Two weeks later, on August 14, 2008, Plaintiffs noticed depositions pursuant to Rule 30(b)(6) regarding several categories of important topics, including: (1) class members' job duties; (2) training and supervision received by class members; (3) hours worked by class members; (4) Wells Fargo's corporate structure; (5) Wells Fargo's databases containing class members' contact information and compensation data; (6) exemption decisions; (7) Wells Fargo's ERISA policies; and (8) Wells Fargo's documents and systems.  *Id.*, ¶ 9, Ex. G.

b.      **The Court Set A Reasonable Discovery And Briefing Schedule And Granted In Full Plaintiffs' Request For A Classwide Letter To Network Engineers To Facilitate Discovery.**

The Court held its initial Case Management Conference on September 16, 2008.  There, Plaintiffs noted their intent to request an opportunity to send a neutral letter to potential class members informing them of the litigation, to facilitate Plaintiffs' discovery efforts and allow class members the opportunity to protect their rights.  The Court informed the parties that such a

1  letter was appropriate if sent from a third party, and ordered the parties to agree on the details.

2  The Court also ordered the parties to agree on a schedule for private mediation, this motion,

3  amendments to the complaint, the class certification motion, and trial.  The parties submitted a

4  stipulated schedule on September 25, 2008, which the Court approved on September 30, 2008.

5  Sagafi Decl., ¶ 11, Ex. H (Stipulation and Order re Case Schedule).  In that schedule, Wells Fargo

6  "committed to making best efforts to produce . . . documents and make . . . deponents available

7  sufficiently in advance of the December holidays to make mediation on January 13, 2009

8  fruitful."  Stipulation and Order re Case Schedule at 1:14-16.  The schedule contemplated January

9  2009 mediation, January to February 2009 collective action certification briefing, an April to June

10  2009 opt-in period, July 2009 amendment adding new parties or claims, October to November

11  2009 class certification briefing, April 2010 completion of fact discovery, and November 2010

12  trial.  *Id.* at 2.

13        The parties had difficulty reaching agreement on the class member letter, resulting

14  in significant delay.  At a telephonic hearing on October 10, 2008, the Court rejected all of Wells

15  Fargo's arguments, ordering that the letter be sent to all Network Engineers companywide, as

16  requested by Plaintiffs.  October 10, 2008 Minute Entry (Docket No. 27).  Wells Fargo also

17  sought to limit dissemination of the letter to only employees of the Technology Information

18  Group ("TIG"), but the Court rejected this limitation as well.  November 4, 2008 Order (Docket

19  No. 30).  On December 1, 2008, approximately 11 weeks after the Court first indicated that it

20  should be sent, the administrator sent the two-page letter to the Network Engineers.

21          **c.**    **Wells Fargo Failed To Produce Basic Documents, Leading To**
22                **The Court's January 26 Order Setting Forth A Discovery Schedule.**

23        Throughout the fall and winter of 2008, Plaintiffs continued to seek the targeted

24  discovery they had requested during the summer, but Wells Fargo refused to cooperate.  One

25  critical aspect of Wells Fargo's resistance was its objection to producing discovery regarding

26  individuals who satisfied the class definition but were not in the same job title as the named

27  Plaintiffs (Network Engineer).  Plaintiffs called, emailed, and wrote letters to Wells Fargo's

28  counsel describing examples of relevant documents to be produced in an effort to move the case

1   forward.  Sagafi Decl., ¶ 12, Ex. I.  By December 2008, after nearly seven months of litigation,

2   Wells Fargo had only produced 47 documents that were not solely pertaining to the individual

3   named Plaintiffs.  *Id*., ¶ 13.  On December 23, 2008, on Plaintiffs' motion, the Court held a

4   telephonic hearing regarding the proper scope of discovery.  *Id.*, ¶ 14.  At the hearing, Wells

5   Fargo requested an opportunity for further briefing, so the Court continued the hearing until

6   January 15, 2009.  *Id.*  On January 15, 2009, the Court held an extensive telephonic hearing,

7   rejecting Wells Fargo's efforts to redraw the bounds of the class.  In its Minute Order of that day,

8   the Court ordered "Defendant to be more cooperative and interactive with Plaintiff."  *Id.*, ¶ 15,

9   Ex. J (Docket No. 65).  On January 26, 2009, the Court entered an Order granting Plaintiffs'

10  motion to compel.  Docket No. 66.

11          The Court's January 26, 2009 Order set forth a three-stage approach for discovery.

12  In Phase I, Wells Fargo was required to produce job descriptions, organizational charts, and

13  skillset expectation documents for "all positions potentially satisfying the class definition" by

14  February 13, 2009.  *Id.*, ¶ 16, Ex. K.  Next, Plaintiffs were to "provide Defendant with a list of job

15  titles they reasonably believe in good faith to be encompassed by the class definition ("Specific

16  Job Titles") based on their investigation and review of documents produced" by February 20,

17  2009, to focus the parties' discovery efforts.  *Id.*  In Phase II, Wells Fargo was required to

18  produce five additional categories of documents relevant to those job titles, by March 16, 2009.

19  *Id.*  Finally, in Phase III, Wells Fargo was required to produce remaining discovery by a date to

20  be agreed upon by the parties.  *Id.*

21              **d.      Wells Fargo Repeatedly Violated The January 26 Order,
                          Leading To A Referral To Magistrate Judge Spero And Wells
22                        Fargo's Eventual Replacement Of Its Counsel.**

23          On February 17, 2009, Wells Fargo produced some, but not all, of the documents

24  required under Phase I.  Specifically, Wells Fargo produced 60 pages of then current job

25  descriptions and 57 pages of organizational charts and other documents about six job titles.  *Id.*,

26  ¶ 17.  On February 19, 2009, Plaintiffs informed Wells Fargo that based on the documents

27  received, they reasonably believed that those six job titles were encompassed by the class

28  definition.  *Id.*, ¶ 18.  Plaintiffs also requested that Wells Fargo supplement its Phase I production,

1   because Plaintiffs discovered additional job titles left out of Wells Fargo's initial Phase I

2   production.  *Id.*

3           On February 26, 2009, rather than remedy its noncompliance with Phase I

4   obligations and comply with the upcoming Phase II deadline, Wells Fargo filed a motion to

5   dismiss (Docket No. 75).  Wells Fargo's motion challenged the class definition as unworkable,

6   apparently hoping to undo – or at least delay – the discovery approach set forth in the Court's

7   January 26 Order.  On April 16, 2009, the Court denied Wells Fargo's motion

8           With the motion to dismiss pending, Wells Fargo simply refused to comply with

9   the January 26 Order.  On February 27, 2009, Wells Fargo sought an extension of the January 26

10  Order's deadline to produce class member data, and a stay of discovery pending resolution of the

11  motion to dismiss.  The Court then assigned the case to Magistrate Judge Spero for resolution of

12  all discovery disputes.  March 19, 2009 Order of Reference to Magistrate Judge (Docket No. 89).

13          Following a hearing on March 30, 2009, Magistrate Judge Spero ordered Wells

14  Fargo to produce some of the discovery Plaintiffs had been requesting since late 2008, and

15  ordered the parties to meet and confer to resolve their disputes regarding the completion of

16  Phase I and Phase II discovery.

17          During this time, Wells Fargo replaced its outside counsel, Carlton DiSante &

18  Freudenberger LLP, with the law firm of Winston & Strawn LLP.  *See* April 1, 2009 Association

19  of Counsel Notice (Docket No. 94.)  From April through May 2009, Wells Fargo produced 30

20  pages of additional Phase I documents.

21                    **e.      The Court Granted In Full Plaintiffs' Request For A Classwide
                                Letter To Eight Additional Job Titles (The Non-Network**
22                              **Engineer Titles) To Facilitate Discovery.**

23          On May 13, 2009, with nine job titles subject to Phase II discovery, Plaintiffs

24  proposed to Wells Fargo that the administrator send a neutral letter to the eight non-Network

25  Engineer titles, consistent with the Court's previous instructions and Orders, using substantially

26  identical text as in the December 2008 Network Engineer letter.  Sagafi Decl., ¶ 19, Ex. L.  After

27  several unsuccessful attempts to secure Wells Fargo's agreement, Plaintiffs sought Court

28  intervention, filing a letter brief on June 18, 2009 and ultimately a joint letter brief in conjunction

1   with Wells Fargo on July 14, 2009.  Sagafi Decl., ¶ 20, Ex. M.  After a hearing on July 15, 2009,

2   Magistrate Judge Spero granted Plaintiffs' request.  Sagafi Decl., ¶ 21, Ex. N.  On August 11,

3   2009, the letter was mailed to 1,960 potential class members by a neutral administrator.  Sagafi

4   Decl., ¶ 22.

5        Following production of sufficient Phase II discovery to support this motion, and

6   after interviewing class members from various job titles, Plaintiffs promptly filed this Motion.

7        **2.      Courts In This And Other Districts Routinely Grant Equitable Tolling**
         **In These Circumstances.**

8

9        This court and others routinely grant equitable tolling in circumstances such as

10  these.  *See, e.g.*, *Mowdy v. Beneto Bulk Transport*, No. C 06-05682 MHP, 2008 WL 901546, at

11  *12 (N.D. Cal. Mar. 31, 2008) (ordering equitable tolling beginning 30 days after plaintiffs' first

12  request for class member information and ending 30 days after entry of conditional certification

13  order); *Madrid v. Peak Construction*, 2:09-cv-00311 JWS, 2009 U.S. Dist. LEXIS 77493 (D.

14  Ariz. July 22, 2009) (granting equitable tolling); *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530,

15  543 (N.D. Cal. 2007) (Patel, J.) (same); *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d

16  1089, 1092-93 (D. Colo. 2005) (granting tolling to the date of the filing of the original complaint

17  where the defendant had refused "to provide contact information for former employees");

18  *Partlow*, 645 F.2d at 760 (granting equitable tolling where original consents found invalid based

19  on improper attorney solicitation of the plaintiffs); *Owens v. Bethlehem Mines Corp.*, 630 F.

20  Supp. 309, 312-13 (S.D. W. Va. 1986) (granting equitable tolling where the court did not rule on

21  plaintiff's motion for collective action certification for over a year, during which time other

22  potential plaintiffs were effectively precluded from filing Consents to Join).

23        **3.      Plaintiffs Request Reasonable Tolling.**

24        To ensure that all potential collective class members are not prejudiced by their

25  lack of knowledge of this lawsuit and thus their inability to file Consent to Join forms, Plaintiffs

26  request that the court equitably toll the claims of the FLSA collective class members.  Plaintiffs

27  believe that tolling should commence on July 19, 2008 (*i.e.*, 30 days after June 19, 2008, when

28  Plaintiffs first requested class member contact information or a tolling agreement) and end on the

REDACTED MPA ISO PLAINTIFFS' MOTION FOR
APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE
CASE NO. 08-2670 CW

1    date of the Court-set deadline for receipt of Consents to Join.

2    IV.    **CONCLUSION**

3             For the reasons set forth above, Plaintiffs respectfully request that the Court grant

4    their Motion, thereby (1) certifying this as a representative collection action; (2) authorizing

5    dissemination of Notice to the prospective collective action class by mail and e-mail; (3)

6    approving the proposed forms of Notice and Consent to Join form; (4) order Wells Fargo

7    promptly to produce the names, addresses, e-mail addresses, telephone numbers, and Social

8    Security numbers of all collective action class members; and (5) equitably toll the statute of

9    limitations for all collective action class members from July 19, 2008, through the date 120 days

10   after notice is mailed.

                                          Respectfully submitted,

11

12

13   Dated:  September 24, 2009            By:   _/s/ Kelly M. Dermody_____
                                                    Kelly M. Dermody

14                                         Kelly M. Dermody (Cal. Bar No. 171716)
                                           Jahan C. Sagafi (Cal. Bar No. 224887)
15                                         Barbra L. Williams (Cal. Bar No. 249967)
                                           Heather H. Wong (Cal. Bar No. 238546)
16                                         LIEFF, CABRASER, HEIMANN &
                                             BERNSTEIN, LLP
17                                         275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
18                                         Telephone:  (415) 956-1000
                                           Facsimile:   (415) 956-1008
19                                         E-Mail: kdermody@lchb.com
                                           E-Mail: jsagafi@lchb.com
20                                         E-Mail: bwilliams@lchb.com
                                           E-Mail: hwong@lchb.com
21
                                           Richard C. Haber (admitted _pro hac vice_)
22                                         Laura L. Volpini (admitted _pro hac vice_)
                                           HABER POLK LLP
23                                         Eaton Center, Suite 620
                                           1111 Superior Avenue
24                                         Cleveland, Ohio 44114
                                           Telephone:  (216) 241-0700
25                                         Facsimile:   (216) 241-0739
                                           E-Mail: rhaber@haberpolk.com
26                                         E-Mail: lvolpini@haberpolk.com

27                                         _Attorneys for Plaintiffs and the proposed Class_
                                           _Members_
28